**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT FILIPIUK,

                *Plaintiff*,

    **v.**

DEPARTMENT OF DEFENSE,

                *Defendant*.

Civil Action No. 25-1974

## MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**                                                     i-iv

**MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR TEMPORARY**    1
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**FACTS**                                                                        3

**BASIS FOR RELIEF**                                                            6

**LEGAL FRAMEWORK GOVERNING THE ADJUDICATION OF SECURITY**    8
**CLEARANCE APPLICATIONS**

    SEAD 4: National Adjudicative Guidelines                    11

    Standard Form 86 (SF-86) Privacy Act Statement              13

    Adjudicative Guidelines: Guideline H                        14

    Department of Defense (DoD) Directive 5220.6                15

**LIKELIHOOD OF SUCCESS ON THE MERITS**                                 16

    Judicial Review                                            16

    Exhaustion of Administrative Remedies                      17

    Standing: Immediate Danger                                 18

    DoDD 5220.6, Section 6.2 and the Administrative Judge's Actions in Mr.
    Filipiuk's Hearing Violate the Fifth Amendment of the United States
    Constitution                                               20
        (A) The Privilege Was Invoked                          21
        (B) Self Incrimination                                 22
            a. Federal Law: Possession of a Controlled Substance    22
            b. The Risk of Criminal Self-Incrimination was "Real and    22
            Appreciable"
        (C) Compelled Testimony                                23
            a. Kalkines Warning                                    25
            b. Mr. Filipiuk was Compelled to Testify Against Himself    27

SUBSTANTIAL THREAT OF IRREPARABLE HARM                                 28

BALANCE OF THE EQUITIES AND PUBLIC INTEREST                            30

    Granting this Motion Serves the Public Interest             31

PRAYER                                                                          32

## Table of Authorities

**Cases**

*Bierly v. Department of Defense*,
  Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *21(D.D.C. Sept. 18, 2024)    18, 19, 20
  Civ. A. No. 23-2386 at *19-20    19, 20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)    18
  461 U.S. 95, 101-102    18, 19
  461 U.S. 95, 109    18, 19

*Coalition for Common Sense in Gov't Procurement v. United States*,
  576 F. Supp. 2d 162 (D.D.C. 2008)    28
  576 F. Supp. 2d 168    28

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006)    7
  455 F.3d 314    7

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d. 1288, 1291-92 (D.C.Cir. 2009)    7
  571 F.3d. 1291-92    7

*Department of the Navy v. Egan*,
  484 U.S. 518, 108 S. Ct. 818 (1988)    16

*Elec. Privacy Info. Ctr. v. DOJ*,
  15 F. Supp. 3d 32 (2014)    28, 29

*FBME Bank Ltd. v. Lew*,
  125 F. Supp. 3d 109 (D.D.C. 2015)    7
  125 F. Supp. 3d 127    7, 30

*Gardner v. Brokerick*,
  392 U.S. 273 (1968)    24, 25
  392 U.S. 276    24

*Garrity v. New Jersey*,
  385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967)    21, 24, 27
  385 U.S. 493, 496    24, 27
  385 U.S. 493, 497    21, 24, 28
  385 U.S. 493, 498    24

*Gebert v. Dep't of State*,
  No. 22-cv-02939 (DLF), 2025 U.S. Dist.1 LEXIS 2956 (D.D.C. Jan. 6, 2025)    16

*Haase v. Sessions*,
  835 F. 2d 902 (D.C. Cir. 1987) — 18, 19
  835 F. 2d 910 — 19
  835 F. 2d 911 — 18, 19

*Lee v. Garland,*
  120 F.4th 880 (D.C. Cir. 2024) — 2, 16
  120 F.4th 886-87 — 16
  120 F.4th 890 — 2, 29

*Lefkowitz* v. *Turley*,
  414 U.S. 70, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973) — 21, 25
  414 U.S. 84-85 — 21, 25
  414 U.S. 82 — 25
  414 U.S. 83 — 25

*Lofton v. District of Columbia*,
  2013 WL 6710352, *2(D.D.C. Dec. 20, 2013) — 6, 7

*Kalkines v. United States*,
  200 Ct. Cl. 570, 473 F.2d 1391 (1973) — 25, 26, 27
  473 F.2d 1393 — 25
  473 F.2d 1394 — 26
  473 F.2d 1398 — 26

*Nat'l Fed'n of Fed. Emps. v. Greenberg*,
  299 U.S. App. D.C. 261, 983 F.2d 286 (1993) — 16, 28
  299 U.S. App. D.C. 261, 983 F.2d 289 — 16, 17, 18, 30
  299 U.S. App. D.C. 261, 983 F.2d 291 — 20, 21, 23-25
  299 U.S. App. D.C. 261, 983 F.2d 292 — 20, 22, 23-25
  299 U.S. App. D.C. 261, 983 F.2d 293 — 20

*Nat'l Treasury Emps. Union v. United States Dep't of Treasury*,
  838 F. Supp. 631 (1993) — 23
  838 F. Supp. 638 — 23, 24
  838 F. Supp. 639 — 27

*Nken v. Holder*,
  556 U.S. 418 (2009) — 7
  556 U.S. 434 — 7
  556 U.S. 435 — 7

*Salinas v. Texas*,
  570 U.S. 178, 185, 133 S. Ct. 2174, 2180 (2013) — 21, 22

*Sherley v. Sebelius*,
   644 F.3d. 388 (D.C. Cir. 2011)        6
   644 F.3d. 392        6, 7

*Thompson v. Sessions*,
   278 F. Supp. 3d 227, 250 (D.D.C. 2017)        19
   278 F. Supp. 3d 227, 251        18

*Trump v. Thompson*,
   20 F.3d. 10 (D.C. Cir. 2021)        7
   20 F.3d. 31        7

*Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*,
   392 U.S. 280 (1968)        24, 25

*Watson v. Dep't of the Treasury*,
   No. 2023-2435, 2024 U.S. App. LEXIS 29739, at *8 n. 4 (Fed. Cir. Nov. 22, 2024)        26

*Webster v. Doe*,
   486 U.S. 592, 108 S. Ct. 2047 (1988)        16
   486 U.S. 601 – 605        17, 30

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7, 21 (2008)        6, 7


**Constitutional Provisions**
Article II § 2        12


**Statutes**
5 U.S.C. § 705        1
18 U.S.C. § 3282        22
21 U.S.C. § 812(c)        22
21 U.S.C. § 812, Schedule I, (c)(10)        22
21 U.S.C. § 844(a)        22
28 U.S.C. § 1331        1

**Other Authorities**
Administrative Procedure Act (APA)        17

Executive Order 10450        11, 12
Executive Order 12968        8, 9, 10, 11, 12, 13
   Section 5.2        13
Executive Order 13467        8, 10, 11, 13
   Section 1.3(e)        9

Section 1.3(g)                                                                    9
Section 2.1                                                                       8
Section 2.3                                                                       9
Section 2.3(c)                                                                    9
Section 2.3(iii)                                                              10, 11
Section 2.3(v)                                                                   10
Section 2.4                                                                       9

Federal Register
  60 FR 63075 at 63077                                                           14

Intelligence Reform and Terrorism Prevention Act (IRTPA)                     11, 12
National Security Act of 1947                                            11, 12, 16
  Section 102(c)                                                                 16


**Rules**
Federal Rules for Civil Procedure
  Rule 65(a)                                                                      1
  Rule 65(b)                                                                      1

**Regulations**
Department of Defense Directive 5220.06, January 2, 1992                      2, 15
  Section 6.2                                                       15, 20, 27, 29, 30
  Section 6.2.3                                                               15, 18

Security Executive Agent Directive (SEAD)
SEAD 4: National Security Adjudicative Guidelines, June 8, 2017       11, 12, 13, 14
  Appendix A                                                                     14
  C                                                                             13
  D.5.d                                                                         11
  E(1)                                                                          12
  E.6                                                                           13
  Guideline H (Drug Involvement and Substance Misuse)                 3, 5, 6, 15, 19
  Section A                                                                     11

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT FILIPIUK,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 25-1974** |
| **DEPARTMENT OF DEFENSE,** | |
| *Defendant*. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Plaintiff (or "Mr. Filipiuk") requests a Temporary Restraining Order (TRO) and Preliminary Injunction enjoining the Department of Defense ("the Department" or "DoD") from setting a deadline or requiring the appeal of the denial of his security clearance by July 2, 2025. Plaintiff makes this request for the following reasons:

1.      Plaintiff files this **Motion for Temporary Restraining Order and Preliminary Injunction** (the "Motion") pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 705, and Rule 65(a) and Rule 65(b) of the Federal Rules for Civil Procedure, for entry of a TRO substantially in the form of the proposed order filed herewith (the proposed "Temporary Restraining Order") and, thereafter, entry of preliminary injunction continuing the Temporary Restraining Order pending adjudication of the Plaintiff's Complaint, filed with the Court on June 25, 2025.

2.      The adjudication of the Plaintiff's claims in the Complaint will provide the Plaintiff with a meaningful opportunity to demonstrate that the Defendant acted in violation of Plaintiff's Fifth Amendment rights by compelling his testimony in a security clearance hearing.

Plaintiff is *not* challenging the revocation of his security clearance. Rather, at issue in the litigation is the constitutionality of the Department's information gathering processes during the security clearance hearing, its processes and procedures (Department of Defense Directive 5220.06, January 2, 1992) as used against Mr. Filipiuk, and its reliance on Plaintiff's unwillingness to incriminate himself to make a determination as to his eligibility for a security clearance.

3.    On July 2, 2025, Plaintiff has a deadline by which he must submit an appeal to the Department of Defense Office of Hearings and Appeals (DOHA) Appeal Board in order to appeal an administrative judge's decision, denying Plaintiff eligibility for access to classified information. Plaintiff contends that this decision was unconstitutionally based upon the invocation of his Fifth Amendment rights during the hearing. If Mr. Filipiuk is unsuccessful at the appeal stage and receives a determination upholding the revocation of his security clearance, his employment with a federal contractor will end because a security clearance is a condition of his continued employment. Furthermore, if the Appeal Board upholds the revocation of the clearance, based upon current precedent, this Court will be precluded from offering Mr. Filipiuk any relief as it is related to the Department's determination. *See Lee v. Garland*, 120 F.4th 880, 890 (D.C. Cir. 2024) (noting that this Court has "followed the Supreme Court's lead [in] consistently holding that courts are not a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security." (internal quotation marks and citations omitted)).

4.    Alternatively, if the Court enjoins Defendant from requiring the appeal by July 2, 2025, and issuing a determination as to the appeal of the revocation of Mr. Filipiuk's clearance pending resolution of this suit, the Court will be permitted to determine whether the Department's

procedures and the administrative judge's actions during the security clearance hearing were unconstitutional, thus potentially preserving Mr. Filipiuk's employment with a federal contractor.

**FACTS**

5.      Plaintiff has been an employee of Johns Hopkins University Applied Physics Laboratory (APL), a federal contractor, since February 2023, and holding a security clearance is a condition of his continued employment. *See* ECF No. 1-13, Declaration of Robert Filipiuk dated May 28, 2025; ECF No. 1-14, Declaration of David Benigni dated May 29, 2025; ECF No. 1-1 at 9.

6.      On January 3, 2023, the Plaintiff completed an SF-86 and disclosed that he used marijuana edibles approximately four times between March 2022 and October 2022. *See* ECF No. 1-2 at 45.

7.      On August 15, 2023, the Defendant, Department of Defense, issued a preliminary decision finding that it was not clearly consistent with the national interest to grant Plaintiff access to classified information. *See* ECF No. 1-3. This decision was made pursuant to Guideline H (Drug Involvement and Substance Misuse) of the Adjudicative Guidelines. Plaintiff was afforded a review of the decision, as well as a request for all underlying investigation materials utilized in the Defendant's decision. *See* ECF No. 1-4.

8.      On November 14, 2023, Plaintiff requested a review of the decision and submitted his response to the Statement of Reasons.   *See* ECF No. 1-5.

9.      On January 30, 2024, Defendant issued a letter notifying Plaintiff that DOHA had received his response and would be referring his case to the hearing office for assignment to an administrative judge. *See* ECF No. 1-6.

10.     On November 1, 2024, a DOHA representative scheduled a hearing for January 8, 2025, and issued the Notice of Hearing on November 5, 2024. *See* ECF No. 1-7.

11.     As part of its exhibit notebook prepared for the hearing, the Department submitted Department of Defense Directive Number 5220.6 (January 2, 1992). *See* ECF No. 1-8.

12.     During the hearing, the following cross-examination occurred between DoD Counsel and Plaintiff.

DoD Counsel:   So you haven't used marijuana since October 2022. Is that correct?

Plaintiff:         I decline to answer that question

DoD Counsel:   Okay. Have you used any other illegal drugs aside from marijuana, since October 2022?

Plaintiff:         I also decline to answer that question.

*See* ECF No. 1-1 at 28.

13.     After closing arguments had concluded, the following exchange occurred between the Administrative Judge and Plaintiff's counsel:

Administrative Judge: You know, throughout the investigation and even during the hearing, the Government expects that applicants will provide full disclosure and truthful answers to their questions. Do you have any concerns that your client declined to answer Department Counsel's question about whether he used any illegal drugs after October 2022?

Plaintiff's Counsel:     Do I have concerns regarding his reliability, trustworthiness and good judgment?

Administrative Judge: Yes. If he's going to provide full disclosure, refusing to answer the Government's question.

Plaintiff's Counsel:     Well, Your Honor, you've – Your Honor, please don't take my pause as anything other than I want to choose my words carefully here. As you know, I've talked to many witnesses that I did not call for a variety of reasons, most of which were repetitive, countless hours with my client and his family. I don't have a concern. But then again, I know much more than you do and I can't go into a lot of it and some of it's repetitive.

I'm sorry, Your Honor. Are you asking me if I have concerns about his reliability or concerns that he would not answer?

Administrative Judge:   I think they kind of go hand in hand. I know we've had closing arguments but I will give you and your client, if you want, one more chance to answer that question, because it is a relevant question.

*Id*. at 66-67.

14.     After a five-minute recess in which Plaintiff's Counsel conferred with Plaintiff, Plaintiff's Counsel informed the Administrative Judge that Plaintiff "decided to stand by his decision not to answer the question that was posed to him by Government's Counsel." *Id*. The Administrative Judge responded with, "Okay. Understood. I gave you the opportunity." *Id*. at 67.

15.     On April 17, 2025, DOHA informed the Plaintiff that the AJ issued an "***unfavorable*** security clearance decision[,]" and that this decision would be the final decision in the case unless Plaintiff appeals to the Appeal Board. *See* ECF No. 1-9 (emphasis in original).

16.     The Administrative Judge considered ample evidence that the Plaintiff had mitigated the Guideline H security concerns, including that Plaintiff "underwent drug tests on August 23, 2023, September 6, 2023, September 21, 2023, October 6, 2023, October 20, 2023, and November 11, 2023." *See* ECF No. 1-10 at 4. The Administrative Judge noted that "[a]ll tests were negative for drugs[,]" and "[o]n November 14, 2024, [Plaintiff's] hair follicles were tested for marijuana[, and t]he tests were negative for drugs." *Id*. at 5. She noted that:

On September 20, 2023, Applicant underwent a drug and alcohol evaluation at a center that has an accredited substance abuse counseling program. The material used to determine and assess his alcohol and drug behavior included a clinical interview, which uses the Diagnostic and Statistical Manual for Mental Disorders (DSM V) criteria for substance abuse and mental health disorders. The clinician also reviewed Applicant's past history of drug and alcohol use. The results revealed that Applicant's infrequency and amount of current drug and alcohol consumption does not meet the DSM-V criteria for substance use disorder. No additional treatment was recommended.

*Id*. at 5.

17.      The Administrative Judge noted that Plaintiff had "acknowledged his illegal drug use and signed a statement of intent indicating he will not use marijuana in the future. He acknowledged any future illegal use could result in the revocation of his security clearance." *Id*. at 9. Further, she stated:

> I considered the [Plaintiff"]s] performance awards and favorable character references. He is highly thought of by his supervisor, friends, co-workers and family members. If [Plaintiff] had answered the question about whether he has used marijuana since October 2022, he might have mitigated the security concerns under Guideline H.

*Id*. at 10.

18.      Nonetheless, the Administrative Judge stated:

> I cannot conclude that [Plaintiff's] marijuana use happened so long ago and is unlikely to recur because he refused to answer the question about whether he used marijuana after October 2022. Applicants are expected to be truthful and honest during security clearance proceedings at all times. His failure to answer this question prevents me from concluding that his marijuana use was in the past and unlikely to recur. It also raises doubt about the [Plaintiff's] current reliability, trustworthiness, and good judgment.

*Id*. at 9.

19.      Plaintiff submitted his Notice of Appeal on May 5, 2025, and DOHA set the due date for the appeal for July 2, 2025. *See* ECF No. 1-11; *See* ECF No. 1-12.

## **BASIS FOR RELIEF**

20.      A Plaintiff seeking a temporary restraining order or preliminary injunction must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in its favor; and (4) that an injunction is in the public interest. *Sherley v. Sebelius*, 644 F.3d. 388, 392 (D.C. Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008); *see also Lofton v.*

*District of Columbia*, 2013 WL 6710352, *2(D.D.C. Dec. 20, 2013) (in determining whether to issue a temporary restraining order, the Court must apply the same standard that is applied to preliminary injunctions.). Factors (3) and (4) merge when the Government is the opposing party. *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, this Circuit has applied a "sliding scale" approach in evaluating the temporary restraining order/preliminary injunction factors. *Sherley*, 644 F.3d. at 392. Accordingly:

> [i]f the Plaintiff makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor. For example, if the Plaintiff makes a very strong showing of irreparable harm and there is no substantial harm to the non-Plaintiff, then a correspondingly lower standard can be applied for the likelihood of success…Alternatively, if substantial harm to the non-Plaintiff is very high and the showing of irreparable harm to the Plaintiff very low, the moment must demonstrate a greater likelihood of success. In this sense, all four factors must be balanced against each other.

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d. 1288, 1291-92 (D.C.Cir. 2009) (internal question marks and citations omitted).

21.    While the Circuit continues to apply the aforementioned "sliding scale," in addition to potential contention with *Winter*, precedent has established, "[t]he likelihood of success and irreparability of harm 'are the most critical' factors." *Trump v. Thompson*, 20 F.3d. 10, 31, citing *Nken*, 556 U.S. at 434. Furthermore, the traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted).

22.    Here, as explained below, the record easily establishes each of these factors and, in fact, makes "an unusually strong showing" as to each element. Plaintiff has a *prima facie* case for preserving the *status quo* in order to allow the judicial process to continue without violating the Plaintiff's constitutional rights.

## LEGAL FRAMEWORK GOVERNING THE ADJUDICATION OF SECURITY CLEARANCE APPLICATIONS

23.     Security clearance adjudications are controlled by Executive Orders wherein the President outlines the processes for security clearance adjudications. Each federal agency has to follow the guidance provided by the President or his designee.

24.     The most applicable and relevant Executive Order, and where this Court's analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008. Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the issue; (2) it appoints the Office of the Director of National Intelligence (ODNI) as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; and (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information.

25.     Executive Order 13467 is critical for multiple reasons; for starters, one of the key goals of Executive Order 13467 can be found in Section 2.1, "*Aligned System.* (a) Investigations and adjudications of covered individuals who require a determination of suitability, eligibility for logical and physical access, eligibility to hold a sensitive position, eligibility for access to classified information, and, as appropriate, contractor employee fitness shall be aligned using consistent standards to the extent possible." The common theme of consistency, fairness, and equity is found throughout the Executive Order.

26.     Executive Order 13467 makes clear that it applies to "covered individuals," which includes civilian, contractor employees. *See* Executive Order 13467, Section 1.3 (e), (g).

27.     Section 2.4 of Executive Order 13467 goes on to state that the duties assigned to the Security Policy Board by Executive Order 12968 to consider, coordinate, and recommend policy directives for executive branch security policies, procedures, and practices are reassigned to the Security Executive Agent and that heads of agencies shall, among other tasks, "(ii) implement any policy or procedure developed pursuant to this order…"

28.     The key takeaways include:

(a)     Civilian contractor employees seeking a security clearance are "covered individuals" under Executive Order 13467;

(b)     Executive Order 13467 appoints the ODNI as the Security Executive Agent;

(c)     The Security Executive Agent is tasked with the responsibilities listed in Section 2.3(c), detailed further below; and

(d)     Defendant falls squarely into the "agencies" contemplated by Executive Order 13467.

29.     Therefore, Defendant is required to follow guidelines and/or instructions by the ODNI/Security Executive Agent, and such guidelines and/or instructions govern how Defendant adjudicates the Plaintiff's - a covered individual - eligibility to classified information.

30.     Furthermore, Executive Order 13467, Section 2.3 specifically dictates that:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

(i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;

(ii) shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position;

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

31.     Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process for contractors and military and federal government civilians.

32.     Section 2.3(iii) must be read in conjunction with Section 2.3(v), which specifically cites Executive Order 12968 as the Executive Order to determine eligibility for access to classified information.

33.     The most important section detailed above is paragraph 2.3(iii), which provides the Director of National Intelligence with the instruction to issue guidelines and instructions to ensure the "uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position." The Security Executive Agent Directive (SEAD) is such applicable guidance.

### SEAD 4: National Adjudicative Guidelines

34.     SEAD 4 defines "covered individual" within paragraph D.5.d. as, "not limited to government employees and include all persons, not excluded under paragraphs (a), (b), or (c) of this definition, who require eligibility for access to classified information or eligibility to hold a sensitive position, including, but not limited to, contractors, subcontractors, licensees, certificate holders, grantees, experts, consultants, and government employees." This guidance is controlling because of Executive Order 13467, paragraph 2.3(iii).

35.     In June 2017, the Director of National Intelligence issued SEAD 4. Section "A" provides the authority for the issuance of the directive and provides the necessary roadmap to understanding this issue. SEAD 4 (A) states in pertinent part:

> The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

11

36.     It is important to note that SEAD 4 is listing the derivative authorities that provide ODNI with the responsibility of establishing the processes and procedures for security clearances. However, the section should technically start at Article II, Section 2 of the U.S. Constitution, which makes the President, the Commander-in-Chief, and historically the Executive Branch the national security authority.

37.     SEAD 4 starts with The National Security Act of 1947 because that formally codified the Executive Branch's authority in national security matters. It provided for the creation and the development of different agencies under the Executive Branch that contributed to our nation's national security. The Intelligence Reform and Terrorism Prevention Act (IRTPA) is the act that created the Director of National Intelligence and positioned this individual at the *top* of the intelligence community framework.

38.     Executive Order 10450 was issued by President Dwight D. Eisenhower in 1953, revoking Executive Order 9835, which created a "Loyalty Review Board." More importantly, the Order expanded the definitions and conditions used to make security risk determinations.

39.     The next Executive Order listed is Executive Order 12968. Executive Order 12968 provided additional guidance and efficiency for processing security clearances.

40.     With SEAD 4 being issued in June of 2017, it is the most recent in time and was promulgated at a higher level than the Department of Defense; any inconsistencies or incongruent procedures must be controlled by SEAD 4. SEAD 4 specifically provides in paragraph E(1) that "The National Security Adjudicative Guidelines in Appendix A shall be used by all authorized adjudicative agencies when rendering a determination for initial or continued eligibility for access to classified information or initial or continued eligibility to a hold a sensitive position."

41.     SEAD 4 also makes it abundantly clear to whom this guidance applies. Paragraph C (Applicability) unequivocally states, "This Directive applies to any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position."

42.     This becomes critical when reading paragraph E.6 in SEAD 4, which reads, "When an adjudicative determination is made to deny or revoke eligibility for access to classified information or eligibility to hold a sensitive position, review proceedings, to the extent they are made available in Executive Order 12968, as amended, Part 5, shall be afforded covered individuals at a minimum."

43.     The requirements afforded to a Subject have been memorialized in Executive Order 12968, Executive Order 13467, and SEAD 4.  In short, these requirements are seen as so basic to a fair process that a new right is not being created. To think otherwise would mean that the entirety of Executive Order 12968, paragraph 5.2 would be creating a new "right", and that is not the case. Instead, it is the bare minimum to provide much-needed protections from the federal government before a final adjudication is rendered.

**Standard Form 86 (SF-86) Privacy Act Statement**

44.     In beginning the process for obtaining a security clearance, an applicant must complete an SF-86. The form is also known as a Questionnaire for National Security Positions. The form asks questions seeking information, including but not limited to, the applicant's background, criminal history, drug history, financial situation, and mental health.

45.     The SF-86 notifies applicants that:

The information you provide is for the purpose of investigating you for a national security position, and the information will be protected from unauthorized

disclosure. The collection, maintenance, and disclosure of background investigative information are governed by the Privacy Act. The agency that requested the investigation and the agency that conducted the investigation have published notices in the Federal Register describing the systems of records in which your records will be maintained. The information you provide on this form, and information collected during an investigation, may be disclosed without your consent by an agency maintaining the information in a system of records as permitted by the Privacy Act [5 U.S.C. 552a(b)], and by routine uses, a list of which are published by the agency in the Federal Register.

*See* ECF No. 1-2.

46.     One of the routine uses is "For Law Enforcement Purposes - To disclose pertinent information to the appropriate Federal, state, local, tribal, foreign, or other public authority responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order where OPM becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation." 2013 OPM Statement of Routine Uses for OPM's Internal and Central Systems of Records, 60 FR 63075 at 63077.

47.     As such, in completing the SF-86, applicants are on notice that throughout the security clearance investigation process, disclosed information may be shared with federal and state law enforcement authorities responsible for investigating and prosecuting criminal offenses.

**Adjudicative Guidelines: Guideline H**

48.     The security concern pursuant to Guideline H (Drug Involvement) is set forth in SEAD 4, Appendix A, paragraph 24. It states:

The illegal use of controlled substances, to include the misuse of prescription and non-prescription drugs, and the use of other substances that cause physical or mental impairment or are used in a manner inconsistent with their intended purpose can raise questions about an individual's reliability and trustworthiness, both because such behavior may lead to physical or psychological impairment and because it raises questions about a person's ability or willingness to comply with laws, rules, and regulations.

49.    Under Guideline H, conditions that could mitigate the security concern include:

(a) the behavior happened so long ago, was so infrequent, or happened under such circumstances that it is unlikely to recur or does not cast doubt on the individual's current reliability, trustworthiness, or good judgment;

(b) the individual acknowledges his or her drug involvement and substance misuse, provides evidence of actions taken to overcome this problem, and has established a pattern of abstinence, including, but not limited to:

(1)    disassociation from drug-using associates and contacts;
(2)    changing or avoiding the environment where drugs were used; and
(3)    providing a signed statement of intent to abstain from all drug involvement and substance misuse, acknowledging that any future involvement or misuse is grounds for revocation of national security eligibility[.]

Guideline H at ¶26.

## Department of Defense (DoD) Directive 5220.6

50.    DoD Directive 5220.6 (Defense Industrial Personnel Security Clearance Review Program) sets forth the procedures to be utilized in security clearance hearings before administrative judges at DOHA.

51.    Section 6.2 provides. in relevant part:

The applicant may elect on constitutional or other grounds not to comply; but refusal or failure to furnish or authorize the providing of relevant and material information or otherwise cooperate at, any stage in the investigation or adjudicative process may prevent the DOHA from making a clearance decision. If an applicant fails or refuses to . . . Follow directions of an Administrative Judge or the Appeal Board; then the Director, DOHA, or designee, may revoke any security clearance held by the applicant and discontinue case processing. Requests for resumption of case processing and reinstatement of a security clearance may be approved by the Director, DOHA, only upon a showing of good cause.

DoDD 5220.6, Section 6.2.3 (January 2, 1992).

## LIKELIHOOD OF SUCCESS ON THE MERITS

### Judicial Review

52.    Plaintiff anticipates that Defendant will attempt to argue that *Dep't of the Navy v. Egan*, 484 U.S. 518, 108 S. Ct. 818 (1988) precludes this Court from reviewing a security clearance determination. *See Lee v. Garland*, 120 F.4th 880 at 886-87 (D.C. Cir. 2024) (finding that *Egan* forecloses judicial review of claims that challenge the basis for the agency's decision to revoke a security clearance.

53.    However, Plaintiff respectfully reminds this Court that Mr. Filipiuk is not challenging the basis of the decision. Rather, he is raising a constitutional challenge of the processes used by the Department to deny his clearance. *See Gebert v. Dep't of State*, No. 22-cv-02939 (DLF), 2025 U.S. Dist. LEXIS 2956 (D.D.C. Jan. 6, 2025) (noting that this "Circuit has repeatedly affirmed that challenges to the process that only tangentially relate to the ultimate grant or denial of a clearance are justiciable.").

54.    This Circuit held in *Nat'l Fed'n of Fed. Emps. v. Greenberg,* 299 U.S. App. D.C. 261, 983 F.2d 286 (1993) that "[i]t is simply not the case that all security-clearance decisions are immune from judicial review." *Id*. at 289. In making this determination the court examined the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592, 108 S. Ct. 2047 (1988).

55.    In *Webster*, a former Central Intelligence Agency (CIA) employee brought an action under the Administrative Procedure Act after he was terminated pursuant to the National Security Act of 1947 (NSA). *Id*. at 594. Section 102(c) of the NSA provided that: "The Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States . . . ." *Id*.

56.    The employee argued that the termination violated both the Administrative Procedure Act (APA) and his constitutional rights. *Id*. at 596. The Court held that judicial review was precluded under the APA as the NSA "fairly exudes deference to the Director, and appears . . . to foreclose the application of any meaningful judicial standard of review." *Id*. at 600. However, it held that Section 102(c) did not preclude the judicial review of the constitutional claims. *Id*. at 603. Further, it held that national security did not justify denying the courts the ability to review constitutional claims and "ordered the district court to adjudicate [the] terminated employee's colorable constitutional challenge to the CIA's denial of his security clearance." *Greenberg*, 983 F.2d 286 at 289; *see Webster*, 486 U.S. 592 at 601-05.

57.    Consequently, any such argument that Defendant might make in this regard would be unsuccessful.

## Exhaustion of Administrative Remedies

58.    To the extent that Defendant will attempt to argue that Plaintiff has not exhausted his administrative remedies in this case because the Department has yet to consider the appeal of the revocation of Plaintiff's security clearance, Plaintiff wishes to reaffirm that he is not challenging the Department's revocation of his clearance. He is, instead, challenging the procedures promulgated by the Department and used in his January 2025 security clearance hearing. As such, this challenge is properly before the court, and Plaintiff need not exhaust his administrative remedy in this regard. *See Nat'l Fed'n of Fed. Emps. v. Greenberg*, 299 U.S. App. D.C. 261, 983 F.2d 286, 289 (1993) (finding that where the substantive issues before the court relate to the constitutionality of the methods used to gather information on which discretionary judgments within the purview of the executive branch are based, judicial review is appropriate).

**Standing: Immediate Danger**

59.    The Supreme Court in *City of L.A. v. Lyons*, 461 U.S. 95 (1983) determined that it is the plaintiff's burden to demonstrate that "that he . . . 'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct" and that he establishes standing if he shows that he is "realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. 95 at 101-02, 109. This holding is reaffirmed by a number of subsequent cases. *See Thompson v. Sessions*, 278 F. Supp. 3d 227, 251 (D.D.C. 2017 (finding that the plaintiff lacked standing to challenge a former employer's investigative procedures because he failed to demonstrate "that he will ever be subject to the [agency's] investigation . . . procedures again."); *Haase v. Sessions*, 835 F. 2d 902, 911 (D.C. Cir. 1987) (noting that a plaintiff must show that he is "likely to be subjected to the policy again" to establish standing); *Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *21 (D.D.C. Sept. 18, 2024 (noting that the plaintiff "lack[ed] standing to seek an order requiring the defendants to refrain from using the challenged criteria to adjudicate a future clearance application . . . because [he] ha[d] not concretely alleged that he will ever again be subject to a security clearance screening by any of the defendants).

60.    In Mr. Filipiuk's case, because the Administrative Judge relied so heavily on his refusal to incriminate himself in her decision, for the purposes of preparing the appeal, he will be forced to either: (1) answer the question posed to him during the hearing in attempt to establish his reliability, trustworthiness and good judgment, which she found to be lacking; or (2) he may continue to assert his Fifth Amendment right, knowing, pursuant to Section 6.2.3 of DoDD 5220.6, that the consequence will be the affirmation of the security clearance denial and the loss of his employment.

61.     Mr. Filipiuk's refusal to answer the question posed to him during the hearing served as the basis for the revocation as all other indications show that he had successfully mitigated the Guideline H security concern. *See* ECF No. 1-10 at 9-10.

62.     Given that Mr. Filipiuk will have to present his case to the Appeal Board on July 2, 2025, regarding his refusal to answer the question posed to him during the hearing and refusal to incriminate himself, he can establish that he is "realistically threatened by a repetition of his experience" in the January 8, 2025, hearing. *Lyons*, 461 U.S. 95 at 109; *see Haase*, 835 F. 2d 902 at 910-911.

63.     Furthermore, Mr. Filipiuk can show that he "'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." *Lyons*, 461 U.S. 95 at 101-102; *see Thompson*, 278 F. Supp. 3d 227 at 250. Should the Department be allowed to require the appeal considering Mr. Filipiuk's invocation of his Fifth Amendment right as a security concern and issue a decision upholding the denial of his security clearance, Mr. Filipiuk will no longer be able to perform his assigned duties as a contractor employee and will be terminated from his position as a federal contractor employee. *See* ECF No. 1-13; *See* ECF No. 1-14.

64.     Finally, it should be noted that this case is distinguishable from *Bierly*, another case where injunctive relief was requested in the context of a security clearance revocation. In *Bierly*, the plaintiff's security clearance had only been suspended, and the agency had not yet made a final determination regarding revocation because, before it could do so, the plaintiff resigned from his position. *Bierly* at *19-20. As such, the agency lost jurisdiction over the clearance process upon the plaintiff's separation, precluding the court from issuing any order in this regard. *Id*. at *20; Declaration of Katie Quintana dated June 26, 2025.

65.     These are not the circumstances before this Court. The Department of Defense fully retains jurisdiction over Mr. Filipiuk's security clearance process as it has not yet considered the appeal of his clearance revocation. As such, unlike the situation in *Bierly*, the Court can order the Defendant to refrain from proceeding with the appeal process and to reconsider Plaintiff's clearance determination excluding his decision to refrain from incriminating himself.

### DoDD 5220.6, Section 6.2 and the Administrative Judge's Actions in Mr. Filipiuk's Hearing Violate the Fifth Amendment of the United States Constitution

66.     In *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 299 U.S. App. D.C. 261, 983 F.2d 286 (1993), the court considered the propriety of granting a preliminary injunction in the context of a security clearance questionnaire. In relevant part, pursuant to the Fifth Amendment, the court considered the constitutionality of a question that asked applicants to disclose illegal drug use or dealing. *Id*. at 291.

67.     Thus, the *Greenberg* Court set out the framework for the requirements of securing a preliminary injunction in the context of a Fifth Amendment challenge for those seeking to hold or continue holding security clearances. *Id*. at 291-293. The framework is as follows:

(1)  The privilege must be invoked;

(2)  The risk of criminal self-incrimination must be "real and appreciable"

(3)  The individual must be "compelled" to testify against himself; and

(4)  In a facial challenge, the conduct as issue must violate the Fifth Amendment "in all, rather than just some, of its possible  applications[.]"[1]

---

[1] As to the final factor in the *Greenberg* framework, Plaintiff notes that he is not facially challenging DoDD 5220.06, Section 6.2. He is solely arguing that, as applied in his case, DoDD 5220.06, Section 6.2 violated his Fifth Amendment privilege. As such, he need not demonstrate that it violates the Fifth Amendment in "all, rather than just some, of its possible applications[.]" *See Greenberg*, 983 F.2d 286, 292.

*Id.*

68.     As shown below, Mr. Filipiuk satisfies each relevant element of this framework.

**A. The Privilege Was Invoked**

69.     In *Greenberg*, the court noted that "[o]rdinarily, a person must invoke [the Fifth Amendment] privilege in order to gain its advantage." *Id*. at 291 (finding that the privilege had not been invoked because no one had refused to answer the question at issue).

70.     Mr. Filipiuk declined to answer the questions posed to him during the hearing regarding his illegal substance use on three separate occasions. *See* ECF No. 1-1 at 28, 65-67. Specifically, he stated, "I decline to answer that question" when asked when he last used marijuana, and he further stated, "I also decline to answer that question" when asked when he last used any other illegal drugs. *Id*. at 28. He once more declined, through counsel, to answer the questions, when the Administrative Judge gave him "one more chance to answer" after closing arguments had concluded. *Id*. at 67.

71.     To the extent that the Defendant may attempt to argue that Mr. Filipiuk did not properly invoke the privilege because he did not expressly indicate that he was declining to answer on the basis of the Fifth Amendment, the Supreme Court has already dispensed with this argument. In *Salinas v. Texas*, 570 U.S. 178, 185, 133 S. Ct. 2174, 2180 (2013), the Supreme Court noted that it had already "held that threats to withdraw a governmental benefit such as public employment sometimes make exercise of the privilege so costly that it need not be affirmatively asserted." [2]

---

[2] In making this assertion, the Court relied upon *Garrity* v. *New Jersey*, 385 U.S. 493, 497, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967) and *Lefkowitz* v. *Turley*, 414 U.S. 70, 84-85, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973), two cases that are directly relevant to Plaintiff's case and on which he relies below.

72.    It further noted that "a witness need not expressly invoke the privilege where some form of official compulsion denies him a 'free choice to admit, to deny, or to refuse to answer." *Id*. (internal quotation marks and citation omitted).

73.    Being that a governmental benefit - Plaintiff's security clearance - was on line, Plaintiff had no obligation to affirmatively assert the privilege. *See id*. Furthermore, as will be explained below, Plaintiff contends, and caselaw strongly supports, that forcing Mr. Filipiuk to decide between criminally incriminating himself or losing his security clearance, and thus, his employment, denied him the 'free choice to admit, to deny, or to refuse to answer." *Id*.

**B.  Self Incrimination**

**a.  Federal Law: Possession of a Controlled Substance**

74.    Under Federal law, "it is unlawful for a person to knowingly or intentionally possess a controlled substance" without a prescription, and "[a]ny person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both." 21 U.S.C. § 844(a).

75.    Pursuant to 21 U.S.C. § 812(c), marijuana is a schedule I controlled substance. *See* 21 U.S.C. § 812(c), Schedule I, (c)(10).

76.    The statute of limitations for such an offense is five years. 18 U.S.C. § 3282.

**b.  The Risk of Criminal Self-Incrimination was "Real and Appreciable"**

77.    In *Greenberg*, the Court noted that "the protection of privilege extends only to criminal prosecutions. A[n] . . .  employee would not be incriminating himself within the meaning of the Fifth Amendment if his answers could not be used against him in a criminal case." *Id*. at 292.

78.    The court further recognized that "[a]dmitting the use of illegal drugs, at least use so recent that the statutes of limitations have not run, would doubtless be incriminating." *Id.*; *see Nat'l Treasury Emps. Union v. United States Dep't of Treasury*, 838 F. Supp. 631, 638 (1993) (finding that a question on the Questionnaire for Public Trust Positions inquiring into drug use "no doubt . . ., if compelled, would elicit incriminating statements[.]").

79.    As stated above, Mr. Filipiuk was on notice, after signing and completing the SF-86, that any information he disclosed during the security clearance process could be shared with authorities responsible for prosecuting drug crimes. *See* ECF No. 1-2.

80.    Although he was honest in completing the SF-86, he was fearful at the hearing stage that the admission of any additional drug use that occurred after he completed the SF-86 and before he signed the September 2023 Statement of Intent, could result in disclosure to federal authorities and subsequent prosecution. Declaration of Robert Filipiuk. As such, being that he was within the five year statute of limitations, he was fearful that information he shared during the hearing about his prior drug use could be used against him in a criminal trial. *Id*.

81.    Further, as will be explained next, there is no indication in the record that Mr. Filipiuk was ever offered immunity from prosecution. *See* Declaration of Robert Filipiuk.

82.    Thus, it is clear that, in Mr. Filipiuk's situation, the risk of criminal self-incrimination was "real and appreciable."

### C. Compelled Testimony

83.    "[T]he Fifth Amendment does not forbid the government from asking questions and it does not forbid the government from taking answers. What is forbidden is compelling an individual to testify against himself." *Greenberg*, 983 F.2d 286 at 291.

84.    This Court has recognized that the Supreme Court has made clear that:

[T]he option to lose [one's] means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent . . . We think [such] statements are infected by the coercion inherent in this scheme [of forced questioning] and cannot be sustained as voluntary under our prior decisions.

*Nat'l Treasury Emps. Union*, 838 F. Supp. 631 at 638 (quoting *Garrity* v. *State of New Jersey,* 385 U.S. 493, 497-98, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967); *see Greenberg*, 983 F.2d 286 at 291-92 ("For purposes of the Fifth Amendment, the threat of firing or other economic sanctions may constitute compulsion.").

85.    The Supreme Court has referred to the choice of having to choose between self-incrimination and keeping one's livelihood as "a choice between the rock and the whirlpool." *Garrity*, 385 U.S. 493, 496.

86.    The Supreme Court has also made clear that an employee cannot be discharged from employment merely because he invokes his Fifth Amendment privilege against self-incrimination in refusing to respond to a question. *Gardner v. Brokerick*, 392 U.S. 273 (1968); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280 (1968); *Nat'l Treasury Emps. Union* 838 F. Supp. 631, 638 (noting that, pursuant to *Garrity* v. *State of New Jersey,* 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967), the government is prohibited "from compelling its employees, under threat of disciplinary action, to provide incriminating information or to waive their privilege against self-incrimination.").

87.    Given this background, the United States Court of Appeals for the District of Columbia Circuit court made clear in *Greenberg*:

Like other individuals, government employees enjoy the protection of the privilege against self-incrimination. Yet the government, like private employers, needs to ensure that its employees are faithfully performing their duties. The government therefore may fire employees who refuse, on the basis of their Fifth Amendment privilege, to answer questions concerning the performance of their

duties, *so long as the employees' answers could not be used against them in a criminal prosecution*.

*Greenberg*, 983 F.2d 286, 291-92 (1993) (internal citations omitted and emphasis added).[3]

88.     However, the Supreme Court has found that "answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying." *Gardner,* 392 U.S. 273, 276.

### a.  Kalkines Warning

89.     In *Kalkines v. United States*, 200 Ct. Cl. 570, 473 F.2d 1391 (1973) the United States Court of Claims examined the propriety of discharging a federal employee following his refusal, in violation of agency policy, to answer questions relating to the performance of his duties. *Id*. at 1391.

90.     The *Kalkines* court recognized the Supreme Court's findings in *Gardner,* 392 U.S. 273, and *Uniformed Sanitation Men Ass'n,* 392 U.S. 280, that an "individual cannot be discharged simply because he invokes his Fifth Amendment privilege against self-incrimination in refusing to respond." *Kalkines*, 473 F.2d 1391, 1393.

91.     It also recognized, pursuant to *Gardner* and *Uniformed Sanitation Men Ass'n,* that "a governmental employer is not wholly barred from insisting that relevant information be given it; the public servant can be removed for not replying if he is adequately informed both that he is

---

[3] To the extent that Defendant may attempt to argue that these cases are not applicable to Plaintiff because he is not employed by the government and is solely a government contractor, this Court need only turn to *Lefkowitz*, 414 U.S. 70. There, the Supreme Court found that government contractors, like public employees, are protected by the Fifth Amendment from compelled testimony that had not been immunized. *Id*. at 82. The Court further found that for the purposes of the Constitution, there is no difference between the loss of a government job and the loss of the ability to perform work as a contractor as both constitute economic sanctions. *Id*. at 82-83.

subject to discharge for not answering and that his replies (and their fruits) cannot be employed against him in a criminal case." *Id*.

92.    In examining the case before it, the *Kalkines* court noted that it was "clear that no advice or warnings as to his constitutional rights was given to Mr. Kalkines, though he was told of the requirement of [the agency] that he answer[,]" and he was further not informed that "his answers . . . could not be used against him in a criminal proceeding." *Id*. at 1394. Therefore, the court noted that the plaintiff was "left sharply impaled on the dilemma of either answering and thereby subjecting himself to the possibility of self-incrimination, or of avoiding giving such help to the prosecution at the cost of his livelihood." *Id*.

93.    Ultimately, the court found that "by failing to make and maintain a clear and unequivocal declaration of plaintiff's 'use' immunity, [the government personnel] gave the employee a very good reason to be apprehensive that he could be walking into a criminal trap if he responded to potentially incriminating questions[,]" and "[h]is failure to respond was excused[.]" *Id*. at 1398. As such, the discharge of this employee was invalid. *Id*.

94.    This case serves as the namesake for the *Kalkines* Warning, a procedural safeguard that ensures a government employee can be compelled to answer questions during an internal investigation without fear that their statements will be used against them in a criminal prosecution. *See Watson v. Dep't of the Treasury*, No. 2023-2435, 2024 U.S. App. LEXIS 29739, at *8 n. 4 (Fed. Cir. Nov. 22, 2024).

95.    The Federal Law Enforcement Training Centers (FLETC) provide helpful insight into the *Kalkines* Warning and how it operates. An excerpt from one of its trainings is included herein and attached as Exhibit A. The FLETC legal instructor states:

> Once employees are on notice that they can't incriminate themselves by their compelled cooperation, because their statements cannot be used against them

criminally, they have no valid Fifth Amendment privilege to invoke and their refusal to cooperate can thus be punished. The key is ensuring that employees are aware of this, which led to the Department of Justice recommending the use by investigators of the *Kalkines* warning in such circumstances. By expressly telling employees that their cooperation is required, their statements are immune from criminal use, and derivative use, and refusal to cooperate could lead to their termination, an employees' subsequent refusal to cooperate can be punished through disciplinary action, since their refusal cannot be based upon a valid assertion of their Fifth Amendment privilege.

*Id.*

### b.  Mr. Filipiuk was Compelled to Testify Against Himself

96.    Pursuant to DoDD 5220.06, Section 6.2, as well as through the Administrative Judge's warning during the hearing, Mr. Filipiuk was on notice that failure to answer the questions posed to him could result in the loss of his security clearance, and thus his employment.

97.    Furthermore, there is no indication in the record that the government ever provided a *Kalkines* Warning or otherwise ensured Mr. Filipiuk that he would be immune from Federal criminal prosecution regarding the possession of a controlled substance.

98.    As the Supreme Court described in *Garrity*, Mr. Filipiuk was given "a choice between the rock and the whirlpool," 385 U.S. 493, 496. Ultimately, it is clear that the Department violated Mr. Filipiuk's Fifth Amendment rights as it compelled his testimony. The Privacy Act Statement that accompanied the SF-86 warned Mr. Filipiuk that answers given throughout the security clearance process could be used against him, and DoD 5220.06, Section 6.2 required that he answer incriminating questions or risk the loss of his clearance, and ultimately his employment. *National Treasury Employees Union*, 838 F. Supp. 631, 639 ("By requiring employees to answer incriminating questions, couples with a warning that the answers could be used against [them], the government is effectively coercing a waiver of immunity.").

99.     When Mr. Filipiuk declined to answer the incriminating questions posed to him, he did lose his clearance, and without this Court's intervention, he will lose his employment. Thus, there is no doubt that his answer was compelled. *See id* at 497 (finding that where individuals are asked to forfeit their jobs or incriminate themselves creates "coercion" that "cannot be sustained as voluntary[.]"). Effectively, Mr. Filipiuk will be discharged for refusal to waive his constitutional rights. *Id*. ("An employee who is discharged for refusing to answer under these circumstances is, in fact, discharged for a refusal to waive his constitutional privilege.").

100.    For the foregoing reasons, and pursuant to the Fifth Amendment framework set forth in *Greenberg*, 983 F. 2d 286, Mr. Filipiuk has established that he will be successful on the merits.

## SUBSTANTIAL THREAT OF IRREPARABLE HARM

101.    Regarding the factor of irreparable harm, Plaintiff acknowledges that it is not easy to define the concept of irreparable harm, but that it is undisputed that "[t]he irreparable injury requirement erects a very high bar for a Plaintiff." *Coalition for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008).  Further:

> [S]everal well-known and indisputable principles guide the inquiry regarding irreparable injury. At a minimum, the party seeking injunctive relief must demonstrate that the claimed injury is "both certain and great" and that the alleged harm is "actual and not theoretical." Moreover, because "the court must decide whether the harm will in fact occur[,]" a party seeking injunctive relief must "substantiate the claim [of] irreparable injury" and "must show that the alleged harm will directly result from the action which the Plaintiff seeks to enjoin." (emphasis in original). Furthermore, because "[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time," the Plaintiff "must show that [t]he injury complained of [is] of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." And the certain and immediate harm that a Plaintiff alleges must also be truly irreparable in the sense that it is "beyond remediation."

*Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32 (2014) (internal citations omitted). Plaintiff can easily prove certain, actual, and significant harm necessitating the need for its requested relief.

102.    Plaintiff will suffer irreparable harm if the court decides not to issue the TRO and PI because he will have to submit his appeal to the DOHA Appeal Board, who will issue a determination on his security clearance, likely a determination to uphold the revocation without having the benefit of this Court ruling on the constitutionality of DoDD 5220.06, Section 6.2. The appeal is Mr. Filipiuk's last opportunity to try and convince the Defendant to grant his clearance. If he is unsuccessful, he will not be permitted to remain employed with APL. At that point, given the current caselaw, this Court's hands will be tied, and it will likely be precluded from awarding Plaintiff any meaningful relief that would allow him to retain his employment. *See Lee*, 120 F.4th 880 at 890.

103.    Thus, a failure to maintain the *status quo* will result in Plaintiff losing his security clearance and his career. *See* ECF No. 1-13; *See* ECF No. 1-14. APL will be forced to terminate Plaintiff because a security clearance is a condition of employment. *Id*. Without the security clearance, Plaintiff cannot be employed in his career field, a field in which he has been highly successful. *Id*.

104.    Furthermore, the loss of the security clearance and his career will also mean that Plaintiff will lose his livelihood as his entire career has been working technical jobs that require a security clearance. *See* ECF No. 1-13, Declaration of Robert Filipiuk. The permanent loss of his job and career will result in additional losses: (1) Plaintiff will lose his potential for earning a high income; (2) Plaintiff will lose his health insurance; (3) Plaintiff will lose his pension; (4) loss of his reputation; and (5) and Plaintiff will lose any other fringe-benefits. *Id.*

105.    This harm will all be the direct result of the DoD compelling Mr. Filipiuk to testify during the security clearance hearing and using his refusal to do so to deny his security clearance, thus resulting in a constitutional violation by the federal government against the Plaintiff.

## BALANCE OF THE EQUITIES AND PUBLIC INTEREST

106.    The balancing of the equities and public interest merge when the government is the opposing party to a TRO and preliminary injunction. *Lew*, 125 F. Supp. 3d 109 at 127. The balance of equities and the public interest weigh in Mr. Filipiuk's favor.

107.    Here, Mr. Filipiuk is requesting this Court enjoin the Defendant from proceeding with the DOHA appeal process which will allow Mr. Filipiuk to remain employed, while the Court considers and makes a determination on the constitutionality of DoDD 5220.06, Section 6.2 as applied to Mr. Filipiuk.

108.    While this Court has previously been reluctant to enter the foray of mandating or compelling the Executive Branch to take certain actions in this arena, especially when there may be underlying national security interests at play, Plaintiff contends this case is distinguishable and warrants the Court to grant Plaintiff's requested relief. *See Greenberg*, 983 F.2d 286 at 289; *Webster*, 486 U.S. 592 at 601-05.

109.    The distinguishing difference is that Plaintiff is not asking the court to rule on the issues of a security clearance or on the decision to revoke Mr. Filipiuk's security clearance, but instead, he is asking the court to merely pause the proceedings against him until a determination can be made regarding the constitutionality of the processes used in the security clearance hearing. *Id*. Once the Court makes a determination in this regard, the Department may proceed with the appeal process, and should the Court determine that DoDD 5220.06, Section 6.2 is

indeed unconstitutional as applied to Mr. Filipiuk, he will be able to present this finding to the Appeal Board for its consideration.

110.    Plaintiff is merely asking that this Court stop the appeal process until it can determine whether Mr. Filipiuk was subjected to unconstitutional processes during the security clearance hearing. The Department created this predicament in compelling Mr. Filipiuk to testify against himself. Being that there is no deadline by which the Appeal Board is required to convene in this matter, and nearly two years have elapsed since the Department suspended Mr. Filipiuk's clearance, the Department would suffer little, if any, harm in waiting for this Court to resolve the merits of the case.

111.    In short, we are asking the judicial branch to prevent the executive branch from committing a Fifth Amendment violation. Ultimately, Plaintiff asks for the Court to prevent the Department from following through with such an injustice.

### Granting this Motion Serves the Public Interest

112.    Plaintiff respectfully submits that the public interest strongly supports the issuance of the requested injunctive relief. There is an important public interest by preserving the *status quo* and preserving the Plaintiff's Fifth Amendment rights.

113.    Plaintiff is not requesting that the Court intervene regarding the Department's decision to revoke his security clearance; instead, Plaintiff is requesting that the Court temporarily enjoins the Department from proceeding any further in the security clearance adjudication process until this Court can make a determination on whether the Department has utilized unconstitutional procedures in adjudicating  Mr. Filipiuk's security clearance.

114.    The public's interest is to ensure that agencies considering individuals for security clearance eligibility abide by the Constitution of the United States and refrain from utilizing

procedures that violate the individuals' Fifth Amendment rights. This motion ensures that the federal government protects basic rights of individuals before they are irreparably harmed by constitutional violations.

## **PRAYER**

115.    For all the foregoing reasons, Plaintiff respectfully requests this Court grant the Motion; that the Order on the Motion serve as a temporary restraining order and preliminary injunction enjoining the Defendant from making a determination on the appeal of the revocation Plaintiff's security clearance until a decision is rendered regarding the constitutionality of the Defendant's conduct in Plaintiff's security clearance hearing; that Plaintiff remains an employee of APL; and that Plaintiff is not prejudiced or harmed by the Defendant's adjudication of the appeal of the revocation his security clearance before this Court has the opportunity to determine whether the Department of Defense utilized unconstitutional procedures during Mr. Filipiuk's security clearance hearing.

116.    Lastly, Plaintiff requests that the hearing be conducted virtually as Plaintiff's attorney resides in Ohio, and he would require several working days to arrange transportation to the Court. In a virtual setting, Plaintiff's attorney could appear immediately upon the Court setting a hearing date.

Dated: June 26, 2025                                    Respectfully submitted,

                                                                    By: */s/ Brett J. O'Brien*
                                                                    BRETT J. O'BRIEN, ESQ.
                                                                    Bar #: 1753983
                                                                    NATIONAL SECURITY LAW FIRM
                                                                    1250 Connecticut Avenue, Suite 700
                                                                    Washington, DC  20036
                                                                    Phone:  (202) 600-4996
                                                                    Fax:      (202) 545-6318
                                                                    Email:   Brett@nationalsecuritylawfirm.com