UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT FILIPIUK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-1974 (ABJ) |
| DEPARTMENT OF DEFENSE, | |
| *Defendant*. | |

PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                              **i-iii**

**BACKGROUND**                                                          **1**

**SUBJECT-MATTER JURISDICTION**                                         **2**

    Plaintiff Has Standing To Bring This Lawsuit          7

**APA AND FINAL AGENCY ACTION**                                         **9**

## TABLE OF AUTHORITIES

**Cases**

*Albuquerque Indian Rights v. Lujan,*
  289 App. D.C. 164, 930 F.2d 49 (D.C. Cir. 1991) .......................... 6

*Brackett v. Mayorkas*,
  2021 U.S. Dist. LEXIS 231117 .......................... 8

*Bennett v. Spear*,
  520 U.S. 154, 178, 117 S. Ct. 1154, 1168 (1997) .......................... 11

*Cuban v. SEC*,
  795 F. Supp. 2d 43, 48 (D.D.C. 2011) .......................... 12

*Darby v. Cisneros,*
  509 U.S. 137, 138, 113 S. Ct. 2539 (1993) .......................... 9
  509 U.S. 137 at 146-47 .......................... 10
  509 U.S. 137 at 152 .......................... 10, 11

*Department of the Navy v. Egan*,
  484 U.S. 518, 108 S. Ct. 818 (1988) .......................... 1, 4, 7, 8

*Garcia v. Pompeo*,
  2020 U.S. Dist. LEXIS 5159 .......................... 8

*Gardner v. Brokerick,*
  392 U.S. 273 (1968) .......................... 6
  392 U.S. 273, 276 .......................... 7

*Garrity* v. *State of New Jersey,*
  385 U.S. 493, 496, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967) .......................... 6

*Interstate Commerce Com v. Bhd. of Locomotive Eng'rs*,
  482 U.S. 270, 107 S. Ct. 2360 (1987) .......................... 10, 11

*Jenner v. United States DOJ*,
  2025 U.S. Dist. LEXIS 99015 .......................... 9

*Lee v. Garland*,
  120 F.4th 880 (D.C. Cir. 2024) .......................... 4, 5
  120 F.4th 880, 887–88 .......................... 4
  120 F.4th 880, 892 .......................... 4

*Lefkowitz v. Turley,*
  414 U.S. 70, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973) .......................... 7
  414 U.S. 70, 82 .......................... 7

414 U.S. 70, 83 — 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) — 9

*Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs*,
  368 U.S. App. D.C. 23, 29, 417 F.3d 1272, 1278 (2005) — 11

*Nat'l Fed'n of Fed. Emps. v. Greenberg*,
  299 U.S. App. D.C. 261, 983 F.2d 286 (1993) — 2, 5, 6
  299 U.S. App. D.C. 261, 983 F.2d 286, 289 — 3, 4, 8
  299 U.S. App. D.C. 261, 983 F.2d 286, 290 — 5, 7, 8
  299 U.S. App. D.C. 261, 983 F.2d 286, 291 — 2, 7, 8
  299 U.S. App. D.C. 261, 983 F.2d 286, 292 — 5, 7, 8
  299 U.S. App. D.C. 261, 983 F.2d 286, 293-294 — 8

*Nat'l Treasury Emps. Union v. United States Dep't of Treasury*,
  838 F. Supp. 631, 638 (1993) — 5, 6

*Rattigan v. Holder*,
  636 F. Supp. 2d 89 (D.D.C. 2009) — 9

*Reliable Automatic Sprinkler Co. v. CPSC*,
  324 F.3d 726 (D.C. Cir. 2003) — 11

*Ryan v. Reno*,
  168 F.3d 520 (D.C. Cir. 1999) — 8

*Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*,
  392 U.S. 280 (1968) — 6

*Valley Forge Christian College v. Americans United for Separation of Church and State*,
  454 U.S. 464, 471, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982) — 6

*Webster v. Doe*,
  486 U.S. 592, 108 S. Ct. 2047 (1988) — 3, 4
  486 U.S. 592, 594 — 3
  486 U.S. 592, 596 — 3
  486 U.S. 592, 600 — 3
  486 U.S. 592, 601-602 — 4
  486 U.S. 592, 603 — 4, 8
  486 U.S. 592, 604-605 — 4

**Statutes**

5 U.S.C. §§ 701-703 — 1

5 U.S.C. § 704                                                          1, 9, 11, 12
5 U.S.C. § 705                                                              1, 10
5 U.S.C. § 706                                                                  1
5 U.S.C. § 706(2)(B)                                                          12

28 U.S.C. § 1331                                                                1


**Other Authorities**

Administrative Procedure Act (APA)                                      1, 3, 9, 10

Federal Register
  32 CFR Part 155 Appendix A, Paragraph 36
  32 CFR Part 155 Appendix A,  ¶27. Paragraph 27                            10, 12

National Security Act of 1947
  Section 102(c)                                                             3, 4


**Rules**

Federal Rules for Civil Procedure
  Fed. R. Civ. P. 65(a)                                                         1
  Fed. R. Civ. P. 65(b)                                                         1

Local Rules of the U.S. District Court for the District of Columbia
(January 2024)
  Local Rule 65.1(a)                                                            1


**Regulations**

Department of Defense's Directive (DoDD) 5220.6, (January 2, 1992)    1, 3, 4, 5, 6, 8, 13
  Section 6.2                                                                   2
  Section 6.2.3                                                                 2

This case challenges the constitutionality of the Department of Defense's Directive 5220.6, not the outcome of Plaintiff's security clearance determination. Specifically, Plaintiff Robert Filipiuk asserts that the Directive, as applied, violated his Fifth Amendment right against self-incrimination by penalizing him for lawfully declining to answer potentially incriminating questions during the clearance process. This is not a challenge to the merits of a security clearance denial under *Department of the Navy v. Egan*, 484 U.S. 518, 108 S. Ct. 818 (1988), but rather a constitutional challenge to the procedures employed in reaching that decision. Courts retain jurisdiction over such constitutional claims, even where the underlying subject matter involves national security. Accordingly, Plaintiff seeks judicial review of the process—not the final outcome—and appropriate relief for the ongoing harm resulting from the unlawful application of Directive 5220.6.

## BACKGROUND

On June 25, 2025, Plaintiff, through his undersigned counsel filed a complaint for declaratory, injunctive, and other appropriate relief against the Defendant for violations of Plaintiff's Fifth Amendment rights and a violation of the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706. *See* ECF No. 1.

On June 26, 2025, Plaintiff, through his undersigned counsel filed,  an emergency motion for a temporary restraining order and preliminary injunctive relief, pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 705, and Rule 65(a) and 65(b) of the Federal Rules for Civil Procedure. *See* ECF No. 3.

On June 26, 2025, Plaintiff, through his undersigned counsel, filed a notice for ex parte application for temporary restraining order. This filing sought to explain Plaintiff's noncompliance with Local Rule 65.1(a), which concerns the furnishing of pleadings to opposing counsel. The

noncompliance was attributed to the urgent nature of the impending harm and the approaching

July 2, 2025, deadline. *See* ECF No. 4.

**DoD Directive 5220.6**

DoD Directive 5220.6 (Defense Industrial Personnel Security Clearance Review Program)

sets forth the procedures to be utilized in security clearance hearings before administrative judges

at DOHA.  Section 6.2 provides. in relevant part:

> The applicant may elect on constitutional or other grounds not to comply; but
> refusal or failure to furnish or authorize the providing of relevant and material
> information or otherwise cooperate at, any stage in the investigation or adjudicative
> process may prevent the DOHA from making a clearance decision. If an applicant
> fails or refuses to . . . Follow directions of an Administrative Judge or the Appeal
> Board; then the Director, DOHA, or designee, may revoke any security clearance
> held by the applicant and discontinue case processing. Requests for resumption of
> case processing and reinstatement of a security clearance may be approved by the
> Director, DOHA, only upon a showing of good cause.

DoDD 5220.6, Section 6.2.3 (January 2, 1992).

**SUBJECT-MATTER JURISDICTION**

The Department of Defense's Directive 5220.6 specifically allows for an administrative

judge to revoke a security clearance when an applicant asserts his Fifth Amendment right against

self-incrimination. Mr. Filipiuk did just that. His refusal to answer the question posed to him during

the hearing, based upon concerns that his answer could subject him to criminal prosecution,

resulted in the Administrative Judge denying him a security clearance. *See* ECF No. 1-10 at 9-10.

In *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 299 U.S. App. D.C. 261, 983 F.2d 286 (1993), the court

noted that "[o]rdinarily, a person must invoke [the Fifth Amendment] privilege in order to gain its

advantage." *Id*. at 291 (finding that the privilege had not been invoked because no one had refused

to answer the question at issue). Similar to *Greenberg,* the question in this case is not whether the

Plaintiff should be granted a security clearance, the question is whether DoD Directive 5220.6 and

its application is constitutional. In the Plaintiff's situation, he suffered a real and continuing harm as the result of the unconstitutional application of DoDD 5220.6.

More specifically, Mr. Filipiuk declined to answer the questions posed to him during the hearing regarding his illegal substance use on three separate occasions. *See* ECF No. 1-1 at 28, 65-67. His refusal was the result of him exercising his right against self-incrimination. Specifically, he stated, "I decline to answer that question" when asked when he last used marijuana, and he further stated, "I also decline to answer that question" when asked when he last used any other illegal drugs. *Id*. at 28. He once more declined, through counsel, to answer the questions, when the Administrative Judge gave him "one more chance to answer" after closing arguments had concluded. *Id*. at 67.

This Court held in *Greenberg,* that "[i]t is simply not the case that all security-clearance decisions are immune from judicial review." *Greenberg*, 983 F.2d 286 at 289. In making this determination, the court examined the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592, 108 S. Ct. 2047 (1988). In *Webster*, a former Central Intelligence Agency (CIA) employee brought an action under the Administrative Procedure Act after he was terminated pursuant to the National Security Act of 1947 (NSA). *Id*. at 594. Section 102(c) of the NSA provided that: "The Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States . . . ." *Id*.

The employee argued that the termination violated both the Administrative Procedure Act (APA) and his constitutional rights. *Id*. at 596. The Court held that judicial review was precluded under the APA as the NSA "fairly exudes deference to the Director, and appears . . . to foreclose the application of any meaningful judicial standard of review." *Id*. at 600. However, it held that

Section 102(c) did not preclude the judicial review of the constitutional claims. *Id*. at 603. Further, it held that national security did not justify denying the courts the ability to review constitutional claims and "ordered the district court to adjudicate [the] terminated employee's colorable constitutional challenge to the CIA's denial of his security clearance." *Greenberg*, 983 F.2d 286 at 289; *see Webster*, 486 U.S. 592 at 601-05.

The decision in *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024), was based on the principle established in *Egan*, 484 U.S. 518, that courts may not review the merits of a security clearance denial. The court in *Lee* explicitly stated that it could not second-guess the Executive Branch's judgment regarding the relevance of certain considerations in determining access to classified information, as such decisions are committed to the discretion of the Executive Branch under *Egan*. *See Lee,* 120 F.4th 880, 887–88. However, the court also clarified that its holding did not foreclose constitutional challenges to agency procedures. *Id*. at 892. It noted that while constitutional claims challenging the substantive basis of clearance decisions are not justiciable, the question of whether *Egan* bars courts from considering constitutional challenges to adverse clearance decisions remains unresolved. *Id.* The court acknowledged that adjudicating such constitutional challenges could involve questions outside the scope of *Egan*'s prohibition, such as the constitutionality of the methods used in clearance decisions. *Id.* The court further noted that the Supreme Court, in *Webster*, "stressed that it would present a 'serious constitutional question' to deny a plaintiff any judicial forum in which to raise colorable constitutional challenges to agency actions." *Id*. at 888.

For the foregoing reasons, this Court has subject matter jurisdiction to review the constitutionality of DoDD 5220.6 and its application to the Plaintiff.

**Plaintiff Challenges the Constitutionality of DoD Directive 5220.6**

This Court in *Greenberg* considered the questions posed on the SF86 and their implications to potential security clearance applicants whereas *Lee* focused on the Plaintiff's security clearance adjudication - an issue that the Plaintiff is not raising. In the present case, Filipuk's issue stems from DoD Directive 5220.6 and its application. In *Greenberg*, the Court noted that "the protection of privilege extends only to criminal prosecutions. A[n] . . . employee would not be incriminating himself within the meaning of the Fifth Amendment if his answers could not be used against him in a criminal case." *Id*. at 292. The court further recognized that "[a]dmitting the use of illegal drugs, at least use so recent that the statutes of limitations have not run, would doubtless be incriminating." *Id*.; *see Nat'l Treasury Emps. Union v. United States Dep't of Treasury*, 838 F. Supp. 631, 638 (1993) (finding that a question on the Questionnaire for Public Trust Positions inquiring into drug use "no doubt . . . , if compelled, would elicit incriminating statements[.]").

Mr. Filipuk was required to sign a Privacy Act Statement as part of the SF86 which explicitly stated that any information he disclosed during the security clearance process could be shared with authorities responsible for prosecuting drug crimes. *See* ECF No. 1-2. Therefore, Filipuk was keenly aware of this risk when he asserted the Fifth Amendment and refused to answer questions posed to him by the Administrative Judge.

This Court has subject matter jurisdiction in this case because this is exactly the type of case for which *Lee* and *Greenberg* allow judicial review. The current case is tangentially related to a security clearance. This Court has routinely held justiciable constitutional challenges to the "methods used to gather information" for clearance decisions. *Greenberg*, 983 F. 2d 286, 290. In *Greenberg*, this Court allowed judicial review of Fifth Amendment claims. More importantly, their injuries in *Greenberg* – the compelled disclosure of potentially incriminating information – existed

independent of the security clearance process just as in the case before us with Mr. Filipiuk. We are not seeking a review of the security clearance adjudication, instead we are seeking a review of the security clearance process wherein the Plaintiff asserted his Fifth Amendment and that assertion resulted in a negative inference under DoD Directive 5220.6.

Furthermore, a Plaintiff lacks standing if the alleged injury is speculative or hypothetical. *See Albuquerque Indian Rights v. Lujan,* 289 App. D.C. 164, 930 F.2d 49 (D.C. Cir. 1991). The complained injury must fall within the "zone of interest" protected by statute or the Constitution. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982). Mr. Filipuk falls within this zone because he is contesting the violation of his constitutional and legal rights. The Supreme Court has referred to the choice of having to choose between self-incrimination and keeping one's livelihood as "a choice between the rock and the whirlpool." *Garrity* v. *State of New Jersey,* 385 U.S. 493, 496, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967).

The Supreme Court has also made clear that an employee cannot be discharged from employment merely because he invokes his Fifth Amendment privilege against self-incrimination in refusing to respond to a question. *Gardner v. Brokerick*, 392 U.S. 273 (1968); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280 (1968); *Nat'l Treasury Emps. Union* 838 F. Supp. 631, 638 (noting that, pursuant to *Garrity*, the government is prohibited "from compelling its employees, under threat of disciplinary action, to provide incriminating information or to waive their privilege against self-incrimination.").

Given this background, the United States Court of Appeals for the District of Columbia Circuit court made clear in *Greenberg*:

> Like other individuals, government employees enjoy the protection of the privilege against self-incrimination. Yet the government, like private employers, needs to

ensure that its employees are faithfully performing their duties. The government therefore may fire employees who refuse, on the basis of their Fifth Amendment privilege, to answer questions concerning the performance of their duties, *so long as the employees' answers could not be used against them in a criminal prosecution*.

*Greenberg*, 983 F.2d 286, 291-92 (1993) (internal citations omitted and emphasis added).[1]

However, the Supreme Court has found that "answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying." *Gardner*, 392 U.S. 273, 276.

Just because a security clearance applicant submits to a security clearance - they do not forfeit their constitutional right against self-incrimination nor do national security matters trump an individual's right against self-incrimination. *See Greenberg*, 983 F.2d 286 at 290. More importantly if Filipuk would be required to answer those questions - he would not need to be assured that the information cannot be used against him in a criminal case. These are assurances that he was never afforded.

**Plaintiff Has Standing To Bring This Lawsuit**

The plaintiff has standing to challenge the security clearance process, not its final adjudication, based on the Fifth Amendment right against self-incrimination. This standing is grounded in the principle that government procedures, even in sensitive national security contexts, must not penalize the exercise of constitutional rights. The D.C. Circuit has recognized the justiciability of constitutional claims in the context of the security clearance process. While *Egan*,

---

[1] To the extent that Defendant may attempt to argue that these cases are not applicable to Plaintiff because he is not employed by the government and is solely a government contractor, this Court need only turn to *Lefkowitz*, 414 U.S. 70. There, the Supreme Court found that government contractors, like public employees, are protected by the Fifth Amendment from compelled testimony that had not been immunized. *Id*. at 82. The Court further found that for the purposes of the Constitution, there is no difference between the loss of a government job and the loss of the ability to perform work as a contractor as both constitute economic sanctions. *Id*. at 82-83.

484 U.S. 518, bars judicial review of the substantive merits of clearance decisions, it does not preclude scrutiny of the methods used to gather information. In *Greenberg*, the D.C. Circuit entertained a Fifth Amendment challenge to a Department of Defense questionnaire, underscoring that procedural challenges involving constitutional rights remain within the court's purview. *See Greenberg*, 983 F.2d 286 at 289-94. The Plaintiff's claim, like in *Greenberg,* targets the process used to collect information - specifically, whether invoking the Fifth Amendment was improperly treated as a basis for denial pursuant to DoD Directive 5220.6 - thereby establishing a redressable constitutional injury.

The reasoning in *Egan* reflects a necessary deference to the Executive Branch's discretion over classified information, but it does not create blanket immunity from constitutional scrutiny. As the D.C. Circuit made clear in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), judicial review remains available where the process implicates constitutional violations. Similarly, in *Webster*, the Supreme Court emphasized that courts must not presume Congress intended to bar review of constitutional claims without a clear statement. 486 U.S. 592 at 603. These principles have been applied in more recent cases such as *Garcia v. Pompeo*, 2020 U.S. Dist. LEXIS 5159, and *Brackett v. Mayorkas*, 2021 U.S. Dist. LEXIS 231117, reaffirming that claims challenging how the government solicits or uses information in the clearance process—when constitutional rights are at stake—are reviewable. Thus, when a plaintiff alleges that his security clearance was jeopardized due to the mere invocation of his Fifth Amendment rights, the challenge pertains to the legality of the process, not the discretionary outcome.

In contrast, *Lee* does not bar the plaintiff's claim, as it focused on nonjusticiability in the context of challenging the final denial of a security clearance rather than the constitutionality of the process itself. *Lee,* 120 F.4th 880 at 885. The plaintiff in *Lee* alleged a constitutional violation

stemming from the revocation of his clearance, while here, the plaintiff asserts that the clearance process penalized protected silence, directly implicating the Fifth Amendment. This critical distinction places the case within a line of decisions—such as *Rattigan v. Holder*, 636 F. Supp. 2d 89 (D.D.C. 2009), and *Jenner v. United States DOJ*, 2025 U.S. Dist. LEXIS 99015—that supports judicial review of constitutional claims tied to the means by which clearance-related information is obtained or interpreted. Accordingly, the plaintiff's procedural challenge is legally viable, narrowly tailored, and consistent with binding precedent preserving access to courts where constitutional rights are at stake.

In other words, the Plaintiff's injuries are concrete, particularized, and redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Also, redressability exists because the court can enjoin the unconstitutional process or expunge the negative inference from the record.

## APA AND FINAL AGENCY ACTION

Pursuant to 5 U.S.C. §704 of the APA, "final agency action for which there is no other adequate remedy in a court are subject to judicial review." Specifically, the APA provides:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for declaratory order, for any form of recoconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to a superior agency authority.

5 U.S.C. §704.

In *Darby v. Cisneros*, 509 U.S. 137, 138, 113 S. Ct. 2539 (1993), the Supreme Court examined "whether federal courts have the authority to require that a plaintiff exhaust available administrative remedies before seeking judicial review under the" APA. The Court determined that "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by

statute or agency rule, the agency action is 'final for the purposes of this section' and therefore 'subject to judicial review' under the first sentence." *Id*. at 146. The Court further noted that:

> Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be "inoperative" pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review.

*Id*. at 152.

> Here, the Department prescribes that:

> If the Administrative Judge decides that it is not clearly consistent with the national interest for the applicant to be granted or to retain a security clearance, the Director, DOHA, or designee, shall expeditiously notify the [Defense Industrial Security Clearance Office (DISCO)], which shall in turn notify the applicant's employer of the denial or revocation of the applicant's security clearance. The letter forwarding the Administrative Judge's clearance decision to the applicant shall advise the applicant that these actions are being taken, and that the applicant may appeal the Administrative Judge's clearance decision.

32 CFR PART 155 APPENDIX A, ¶27. Paragraph 27 demonstrates that the appeal is discretionary and not mandatory as the applicant "*may* appeal the Administrative Judge's clearance decision." *Id*. (emphasis added). Furthermore, the Department does not make its decision "inoperative" pending the appeal. Plaintiff security clearance remains revoked pending the appeal. Thus, pursuant to *Darby*, the decision of the Administrative Judge is final for the purposes of the APA, and Mr. Filipiuk is entitled to judicial review under the APA. *Darby*, 509 U.S. 137 at 152. Further, in order to prevent irreparable injury, the reviewing court "may issue all necessary and appropriate process to . . . preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705.

Additionally, the Supreme Court made clear in *Darby* that courts may not impose extra exhaustion requirements beyond what the statute or agency rules mandate. *Darby,* 509 U.S. 137 at 146-47. This principle was first articulated in *Interstate Commerce Com v. Bhd. of Locomotive*

*Eng'rs*, 482 U.S. 270, 107 S. Ct. 2360 (1987), where the Court rejected the notion that petitioning for reconsideration is a prerequisite to judicial review unless expressly required. In *Darby*, the Court extended that logic to appeals within the agency: unless intra-agency appeals are mandatory by statute or regulation and delay the effectiveness of the action, they are not a bar to seeking review. *Darby,* 509 U.S. 137 at 152. Therefore, where the security clearance process permits—but does not require—appeal from an Administrative Judge's decision, and where that decision imposes immediate consequences (e.g., clearance denial or revocation), the decision is final for § 704 purposes, and judicial review in district court is appropriate. This reading has been endorsed by the D.C. Circuit in *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 355 U.S. App. D.C. 346, 324 F.3d 726 (2003), and similar cases, which emphasize that § 704 governs the timing of judicial review, not its availability, and does not demand exhaustion of non-mandatory remedies.

Caselaw further clarifies the concept of "final agency action." In *Bennett v. Spear*, 520 U.S. 154, 178, 117 S. Ct. 1154, 1168 (1997), the Supreme Court articulated the two-part test for finality. First, the action must mark the consummation of the agency's decision-making process. *Id*. That is to say that the action "must not be of a merely tentative or interlocutory nature." *Id*. Secondly, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow." *Id*. (internal citations omitted). "In other words, an agency action is final if, as the Supreme Court has said, it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party challenging it or if, as our court has said, 'it imposes an obligation, denies a right or fixes some legal relationship.'" *Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 368 U.S. App. D.C. 23, 29, 417 F.3d 1272, 1278 (2005) (internal citations and quotation marks omitted).

11

Here, the Administrative Judge's decision satisfies each of these prongs. First, the Administrative Judge's decision is not tentative, as an appeal is not mandatory. *See* 32 CFR PART 155 APPENDIX A, ¶27. Further, is it not interlocutory in nature, as it makes a determination that denies or revokes a security clearance, thus disposing of all claims of the applicant. *See Cuban v. SEC*, 795 F. Supp. 2d 43, 48 (D.D.C. 2011) ("Court action that terminates fewer than all claims in a case is considered interlocutory."). Secondly, the Administrative Judge's decision unequivocally provides a direct and immediate effect on the Plaintiff because the Administrative Judge's decision denies the Plaintiff a security clearance, thus imposing a legal consequence. *See* ECF No. 1-9 (containing the Administrative Judge's decision which states,"Eligibility to access to classified information is denied.").

Thus, for the aforementioned reasons, the APA claim is ripe for judicial review since the Agency action is final - irrespective of the Plaintiff's opportunity for a discretionary appeal - as supported by §704 and the case law discussed above.

As the revocation of Plaintiff's security clearance, premised upon the invocation of his Fifth Amendment rights, will irreparably harm Plaintiff as it is a condition of his employment, the Court may enjoin the Defendant from setting a deadline for the appeal of the revocation pending the outcome of this litigation. Under the APA, "the reviewing court shall decide all relevant questions of law . . ." and it shall "hold unlawful and set aside agency action, findings, and conclusions . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. §706(2)(B). In using Plaintiff's assertion of his Fifth Amendment rights as a basis to revoke Plaintiff clearance, a condition of his employment, the Department violated Plaintiff's constitutional rights and privilege against self incrimination. Thus, pursuant to the APA, this Court may set aside these actions and the findings and conclusions that resulted therefrom.

As the plaintiff is challenging the constitutionality of the clearance process itself on the basis of the Agency's application of DoD Directive 5220.6—penalizing him for invoking the Fifth Amendment—that claim ripens at the point when the process results in a determinative action, like the Administrative Judge's ruling, regardless of whether further agency review is pending or available. Consequently, the D.C. District Court has jurisdiction to review constitutional claims arising from the process and not the actual security clearance determination.

## The Plaintiff Continues to be Harmed by DoD Directive 5220.6

Plaintiff will suffer irreparable harm if the court decides not to issue the TRO and PI because the discussion of his unwillingness to testify within the Administrative Judge's decision will be part of a federal record that will follow the Plaintiff for the rest of his career. Thus, a failure to maintain the *status quo* will result in Plaintiff continuing to have to respond to negative inferences that he was guilty of a crime - despite his constitutional right to assert this right. Effectively it is the equivalent of a conviction by public opinion for purposes of any career he wants to have in the federal government. *See* ECF No. 1-13; *see* ECF No. 1-14.

Furthermore, the loss of the security clearance and his career will also mean that Plaintiff will lose his livelihood as his entire career has been working technical jobs that require a security clearance. *See* ECF No. 1-13, Declaration of Robert Filipiuk. The permanent loss of his job and career will result in additional losses: (1) Plaintiff will lose his potential for earning a high income; (2) Plaintiff will lose his health insurance; (3) Plaintiff will lose his pension; (4) loss of his reputation; and (5) and Plaintiff will lose any other fringe-benefits. *Id.*

This harm will all be the direct result of the DoD compelling Mr. Filipiuk to testify during the security clearance hearing and using his refusal to do so to deny his security clearance, thus resulting in a constitutional violation by the federal government against the Plaintiff.

**Relief Requested**

Plaintiff requests that the Court impose the TRO and Preliminary Injunction in order to maintain the status quo while the Court determines the constitutionality of DoD Directive 5220.6 and its application.


Dated: June 30, 2025                              Respectfully submitted,

By: */s/ Brett J. O'Brien*
BRETT J. O'BRIEN, ESQ.
Bar #: 1753983
NATIONAL SECURITY LAW FIRM
1250 Connecticut Avenue, Suite 700
Washington, DC  20036
Phone:  (202) 600-4996
Fax:      (202) 545-6318
Email:   Brett@nationalsecuritylawfirm.com